# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| BMC SOFTWARE, INC., | § § § | |
| Plaintiff, | § § | CASE NO. 2:14-CV-903-JRG |
| v. | § § | |
| SERVICENOW, INC., | § § | |
| Defendant. | § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant ServiceNow, Inc.'s Motion to Transfer to the Southern District of Texas (Dkt. No. 16). Having considered the motion, the parties' briefing, and the evidence in the record in light of the applicable law, the Court **DENIES** the motion for the reasons set forth below.

### I.  INTRODUCTION AND BACKGROUND

Plaintiff BMC Software, Inc. ("BMC") is a Delaware corporation based in Houston, Texas and the owner of United States Patent Numbers 5,978,594 (the "'594 Patent"), 6,816,898 (the "'898 Patent"), 6,895,586 (the "'586 Patent"), 7,062,683 (the "'683 Patent"), 7,617,073 (the "'073 Patent"), 8,646,093 (the "'093 Patent"), and 8,674,992 (the "'992 Patent") (collectively, the "Patents-in-Suit"). Defendant ServiceNow, Inc. ("ServiceNow") is a Delaware corporation based inSanta Clara, California.

BMC filed this action on September 23, 2014, alleging that Service Now infringes the Patents-in-Suit by "making, using, offering to sell, selling, and/or providing installation,

operational support, and instructions for infringing products, including the ServiceNow Service Automation Platform and related products." (Dkt. No. 1, at ¶¶ 32, 37, 42, 47, 52, 57, and 62.)

Approximately two months after this suit was filed, on November 13, 2014, ServiceNow filed this motion to transfer (Dkt. No. 16) (hereinafter "MTV"), contending that the Southern District of Texas is a clearly more convenient forum than the Eastern District of Texas.

## II.  LEGAL STANDARDS

28 U.S.C § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." 28 U.S.C. § 1404(a). However, a motion to transfer venue should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Nintendo Co.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1388, 1342 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of America, Inc. (Volkswagen II)*, 545 F.3d 304, 315 (5th Cir. 2008). District courts have "broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir. 1987)).

The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004). If the transferee district is a proper venue, then the Court must weigh the relative public and private factors of the current venue against the transferee venue. *Id.* In making such a convenience determination, the Court considers several private and public interest factors. *Id.* "Factors relating to the parties' private interests include '[1)] relative ease of access to sources of proof;

[2)] availability of compulsory process for attendance of unwilling, and [3)] the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and [4)] all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 n.6 (2013) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n.6, (1981); *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315. "Public-interest factors may include '[1)] the administrative difficulties flowing from court congestion; [2)] the local interest in having localized controversies decided at home; [and] [3)] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Atl. Marine*, 134 S. Ct. at 581 n.6 (citing *Piper Aircraft*, 454 U.S. at 241 n.6); *Volkswagen I*, 371 F.3d at 203; *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319. Other public factors are: 4) the familiarity of the forum with the law that will govern the case; and 5) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Volkswagen I*, 371 F.3d at 203; *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319. Although the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Volkswagen II*, 545 F.3d at 314-15.

In the Fifth Circuit, the plaintiff's choice of venue has not been considered a separate factor in this analysis. *Volkswagen II*, 545 F.3d at 314-15. Still, "[t]he Court must also give some weight to the plaintiffs' choice of forum." *Atl. Marine*, 134 S. Ct. at n.6 (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)). "Plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous (consistent with jurisdictional and venue limitations), [and the Supreme Court has] termed their selection the 'plaintiff's venue privilege.'" *Atl. Marine*, 134 S. Ct. at 581 (citing *Van Dusen v. Barrack*, 376 U.S. 612, 635 (1964).) The plaintiff's choice of

3

venue has been seen as contributing to the defendant's elevated burden in proving that the transferee venue is "clearly more convenient" than the transferor venue. *Volkswagen II*, 545 F.3d at 315; *Nintendo*, 589 F.3d at 1200; *TS Tech*, 551 F.3d at 1319.

"The idea behind § 1404(a) is that where a 'civil action' to vindicate a wrong—however brought in a court—presents issues and requires witnesses that make one District Court more convenient than another, the trial judge can, after findings, transfer the whole action to the more convenient court." *Van Dusen*, 376 U.S. at 622 (quoting *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960)). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622). Section 1404(a) requires this discretionary "individualized, case-by-case consideration of convenience and fairness." *Genentech* 566 F.3d at 1346 (quoting *Van Dusen*, 376 U.S. at 622).

## III. ANALYSIS

### A. Proper Venue

The parties do not dispute—and the Court expressly finds—that this case could have been initially and properly brought in either the Eastern District of Texas or the Southern District of Texas.

### B. Private Interest Factors:

#### i. *Relative Ease of Access to Sources of Proof*

Despite substantial technological advances in the transportation and delivery of electronic documents, physical accessibility to sources of proof continues to be weighed as a private interest factor. *See Volkswagen II*, 545 F.3d at 316; *TS Tech*, 551 F.3d at 1321; *Genentech*, 566

F.3d at 1345. Nevertheless, the moving defendant bears the burden of establishing that the proposed transferee venue is clearly more convenient than the Eastern District of Texas. *See, e.g.*, *Nintendo*, 589 F.3d at 1197. Vague assertions regarding the volume and location of potential evidence, much of which may be irrelevant to the case, cannot satisfy that burden. *See In re Apple Inc.*, 743 F.3d 1377, 1379 (Fed. Cir. 2014).

To carry its burden, ServiceNow relies on two declarations from Daniel McGee, ServiceNow's Chief Operating Officer. (Declaration of Daniel McGee, Dkt. No. 17-22 ("McGee Decl.") and Supplemental Declaration of Daniel McGee, Dkt. No. 28-1 ("McGee Suppl. Decl.").) Mr. McGee identifies the following individuals with relevant knowledge of the accused ServiceNow products: Fred Luddy, ServiceNow's founder, from San Diego, California; Pat Casey from San Diego, California; Dave Stephens from Santa Clara, California; Sridhar Chandrashekar from Kirkland, Washington; Haviv Rosh from Tel Aviv, Israel; and Karel van der Poel from Amsterdam, Netherlands. (McGee Decl. ¶¶ 5-10.) Mr. Luddy and Mr. Casey have technical knowledge regarding ServiceNow Service Automation Platform. (*Id.* at ¶ 5.) Mr. Luddy and Mr. Stephens have technical knowledge regarding ServiceNow Incident Management, ServiceNow Problem Management, and ServiceNow Change and Release Management. (*Id.* at ¶ 6.) Mr. Luddy and Mr. Chandrashekar have technical knowledge regarding ServiceNow Business Services Management Map and ServiceNow Configuration Management. (*Id.* at ¶ 7.) Mr. Rosh and Mr. Chandrashekar have technical knowledge regarding ServiceWatch. (*Id.* at ¶ 8.) Mr. van der Poel and Mr. Casey have technical knowledge regarding ServiceNow Performance Analytics. (*Id.* at ¶ 9.) Mr. Luddy, Mr. Casey, and Mr. Chandrashekar have technical knowledge regarding ServiceNow Discovery and ServiceNow Orchestration. (*Id.* at ¶ 10.) Further, Mr. McGee states that "[t]he people who are most

knowledgeable about and have access to technical, engineering, and development documents, information related to the accused ServiceNow products and related source code are located primarily in Santa Clara, San Diego, Kirkland, and overseas." (*Id*. at ¶ 13.)

In regards to financial, sales, and marketing information, Mr. McGee also states that "[t]he people who are most knowledgeable about and have access to financial, sales, and marketing documents related to the accused ServiceNow products are located in Santa Clara." (*Id*. at ¶ 14.) He further states that "ServiceNow maintains regional sales offices throughout the United States" that "serve as hubs for Sales and Marketing personnel." (*Id*. at ¶ 11.) He also states that fourteen employees in ServiceNow's Sales & Marketing division are based out of a sales office in Plano. (*Id*. at ¶ 12.) However, Mr. McGee states that the Plano employees do not have "any product development or software engineering experience or responsibilities related to any of ServiceNow's products." (*Id*.) The Court notes that Mr. McGee never states that the Plano employees have no relevant information. Rather, Mr. McGee states that the Plano employees are not likely to have "***non-duplicative*** information that is relevant to ServiceNow's sales and marketing of the products." (McGee Suppl. Decl. ¶ 7 (emphasis added).) Further, he also states that "ServiceNow does not have any servers or databases that store technical, engineering, or development documents or information or source code of any kind at the Plano location." (McGee Decl. ¶ 12.) Again, rather than stating unequivocally that no relevant documents are stored in Plano, Mr. McGee hedges by saying that the "Plano office does not have any servers or databases that store relevant, ***non-duplicative*** sales or marketing documents." (McGee Suppl. Decl. ¶ 4 (emphasis added).) ServiceNow also employs a set of former BMC employees in California, Israel, and Austin, Texas. (McGee Decl. ¶ 15.)

Notably, none of ServiceNow's witnesses or documents are located in Southern District of Texas. In contrast, ServiceNow does have employees and documents in this District. ServiceNow's other documents and witnesses, to the extent they are located within the United States, appear to be located either in San Diego or Santa Clara. The Court notes that Marshall and Houston are approximately the same distance from San Diego and Santa Clara. For example, Santa Clara is 1,613.46 miles from Houston[1] and 1,593.08 miles from Marshall[2], a difference of around 20 miles. Similarly, San Diego is 1,302.52 miles from Houston[3] and 1,325.29 miles from Marshall[4], a difference of around 23 miles.

BMC counters with a declaration from its Vice President of Customer Programs, Mitchell Myers. (Declaration of Mitchell Myers, Dkt. No. 24-5 ("Myers Decl.").) Mr. Myers states that BMC has thirty-five employees in a Plano office, as well as an unspecified number of employees that "work from home in and around the North Texas area." (*Id.* at ¶ 5.) Mr. Myers does not state whether these North Texas employees are based out of the Eastern District of Texas. He also states that the Plano office provides services related to "sales, marketing, technical support, order services, and product development." (*Id.* at ¶ 7.) Further, he states that "physical documents such as archived sales data and archived sales presentations and servers used for training, testing, and support for BMC's software products are located at BMC's Plano office." (*Id.*) Mr. Myers states that BMC also "performs product development, including research and development, for its software products at its Houston, Austin, and Plano offices." (*Id.* at ¶ 9.) Mr. Myers also states that "the vast majority of BMC's business-related documents are stored electronically." (*Id.* at ¶ 7.) The Court notes that Mr. Myers does not state whether the BMC's

---

[1] http://www.distance-cities.com/search?from=Santa+Clara%2C+CA%2C+United+States&to=houston%2C+tx
[2] http://www.distance-cities.com/search?from=Santa+Clara%2C+CA%2C+United+States&to=marshall%2C+tx
[3] http://www.distance-cities.com/search?from=san+diego%2C+ca&to=houston%2C+t
[4] http://www.distance-cities.com/search?from=san+diego%2C+ca&to=marshall%2C+tx

technical documents are also stored electronically. BMC still employs the inventor of one of the Patents-in-Suit, Jason L. Graham, in Austin. (Declaration of Jason Graham, Dkt. No. 24-3, at ¶¶ 5, 7.)

Finally, one third-party inventor lives in Houston, (Declaration of Roger Huebner, Dkt. No. 24-4 ("Huebner Decl."), at ¶ 7), five third-party inventors live in Austin, (MTV at 9-10; Declaration of Olivier Pignault, Dkt. No. 24-6 ("Pignault Decl."), at ¶ 7; Declaration of Ricky Poston, Dkt. No. 24-7 ("Poston Decl."), at ¶ 7; Declaration of Michael Scholtes, Dkt. No. 24-8 ("Scholtes Decl."), at ¶ 7), and three third-party inventors live in Europe, (Declaration of Dana Vallera, Dkt. No. 24-1 ("Vallera Decl."), at ¶ 4). BMC has also provided declarations from four of the six Texas-based third-party inventors, including the third-party inventor from Houston, stating that Marshall is not unduly inconvenient and that traveling to Marshall is not unduly burdensome; these inventors make no comment regarding the relative convenience of Houston. (Huebner Decl. ¶ 7; Pignault Decl. ¶ 7; Poston Decl. ¶ 7; Scholtes Decl. ¶ 7.) The prosecuting attorneys for the Patents-in-Suit are based out of Houston, Sunnyvale, California, and Washington, D.C.. (*See* Plaintiff's Response to MTV, Dkt. No. 24 ("Resp."), at 6; Defendant's Reply Brief in Support of MTV, Dkt. No. 28 ("Repl."), at 3 n.3.)

As ServiceNow points out, "[b]ecause this is a patent case, it is likely that most of the relevant evidence in this action will come from ServiceNow." (MTV at 6 (citing *Genentech*, 566 F.3d at 1345).) The Court noted previously that ServiceNow has an office in this District (and none in the Southern District of Texas) and that most of ServiceNow's technical documents and witnesses appear to be located in California. Any possible lessening of convenience or cost resulting from a transfer to Houston is highly unlikely. Further, as ServiceNow did not go so far as to say that the Plano office has no relevant information, the Plano office presumably has

relevant, if potentially duplicative, sales or marketing documents. Likewise, a portion of BMC's relevant documents and employees are located in the Eastern District of Texas, and the other documents allegedly can be transferred electronically. While BMC has offices in this District and the Southern District of Texas, BMC has already asserted that the Southern District of Texas is not clearly more convenient than the Eastern District of Texas for its witnesses or documents. (*See* Resp. at 1.) Additionally, four of the third-party inventors have stated that Marshall is not unduly burdensome or inconvenient. Finally, for those remaining inventors in Europe or Austin, TX, the convenience of Houston versus Marshall again appears to be somewhere between slim and none.

Consequently, the Court finds that this factor is neutral.

### ii. *Availability of Compulsory Process*

The second private interest factor is the availability of compulsory process to secure the attendance of non-party witnesses. A venue that has "absolute subpoena power for both deposition and trial" is favored over one that does not. *Volkswagen II*, 545 F.3d at 316.

ServiceNow specifically identifies two categories of third-party witnesses: (1) third-party inventors; and (2) third-party patent prosecuting attorneys. As to the second category, in the Court's experience, patent prosecuting attorneys are very rarely called to trial. Therefore, the Court gives little weight to the availability of compulsory process as to these witnesses.

For the first category, both parties acknowledge that the majority of the third-party inventors live in either Austin or Houston. BMC states, and ServiceNow does not dispute, that three of the third-party inventors live in Europe. Under Federal Rule of Civil Procedure 45(c)(1)(B), both this Court and the Southern District of Texas have the power to secure the attendance of the third-party inventors in Texas for trial. Neither the Eastern District nor the

Southern District has the power to secure the attendance of those third-party inventors currently in Europe. Further, the Court notes that four of the third-party witnesses have submitted declarations stating that they would be willing to appear at trial in Marshall and, thus, compulsory process would be unnecessary for those witnesses. (Huebner Decl. ¶ 7; Pignault Decl. ¶ 7; Poston Decl. ¶ 7; Scholtes Decl. ¶ 7.) Accordingly, the Court finds that factor is also neutral.

### iii. Cost of Attendance for Willing Witnesses

The third private interest factor is the cost of attendance for willing witnesses. "The convenience of the witnesses is probably the single most important factor in a transfer analysis." *Genentech,* 566 F.3d at 1342. While the Court must consider the convenience of both the party and non-party witnesses, the Court considers the convenience of non-party witnesses the more important factor. *See, e.g.*, *Intellectual Ventures I LLC v. Altera Corp.* 842 F.Supp.2d 744, 757 (D. Del. 2012) ("[T]he Court should be particularly concerned not to countenance undue inconvenience to third-party witnesses, who have no direct connection to the litigation."); *ESPN, Inc. v. Quiksilver, Inc.*, 581 F.Supp.2d 542, 547 (S.D.N.Y. 2008) ("Moreover, '[t]he convenience of non-party witnesses is accorded more weight than that of party witnesses.'"); *see also* 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3851 (3d ed. 2012). In weighing this factor, "[a] district court should assess the relevance and materiality of the information the witness may provide." *Genentech,* 566 F.3d at 1343.

Respondant BMC has identified witnesses with potential knowledge on relevant issues in both the Southern District of Texas and the Eastern District of Texas. None of Movant ServiceNow's witnesses are in the Southern District of Texas. Thus, the only inconvenience avoided by a transfer would be to the Respondant, the party that chose the Eastern District of

Texas, not the Movant. BMC has already argued that the Southern District is not clearly more convenient. (Resp. at 1.) The Court now turns to examine the convenience as to the identified, willing *non-party* witnesses.

As noted previously, ServiceNow has identified two categories of third-party witnesses, and again, because patent prosecuting attorneys are rarely called to trial, the Court gives little weight to the cost of attendance to the patent prosecuting attorneys. Turning to the third-party inventors, ServiceNow has identified one third-party witness in Houston, Roger Huebner, and six third-party witnesses in Austin, Martin Picard, Michael Scholtes, Michael Warpenburg, Olivier Pignault, Jean-Marc Trinon, and Michael Brasher. (MTV at 8-10.) BMC states that two of the Austin inventors, Mr. Picard and Mr. Trinon, and another inventor, David Bonnell, currently live in Europe. (Vallera Decl. ¶ 4.) Neither party has provided any indication of whether Mr. Picard, Mr. Trinon, Mr. Bonnell, Mr. Warpenburg, or Mr. Brasher, would be willing to appear if called. Thus, the Court does not address the relative convenience as to these witnesses.

The Houston inventor, Mr. Huebner, and three of the Austin inventors, Mr. Scholtes, Mr. Pignault, and Mr. Poston, have provided declarations stating they are willing to appear in person at trial if it is held in Marshall, Texas and that Marshall is not unduly burdensome nor unduly inconvenient. (Huebner Decl. ¶¶ 6-7; Pignault Decl. ¶¶ 6-7; Poston Decl. ¶¶ 6-7; Scholtes Decl. ¶¶ 6-7.) Importantly, the four declarations are devoid of any mention as to whether or not these witnesses would be willing to appear in the Southern District of Texas. (*See, e.g.*, Huebner Decl.; Pignault Decl.; Poston Decl.; Scholtes Decl.)

Accordingly, the Court finds this factor weighs against transfer.

### iv. Other Practical Problems

ServiceNow argues, and BMC does not dispute, that this factor is neutral. (MTV at 12.)

11

### C. Public Interest Factors:

#### i. *Local Interest in Having Localized Interests Decided at Home*

The Court considers the local interest in the litigation because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (5th Cir. 2004). Interests that "could apply virtually to any judicial district or division in the United States," such as the nationwide sale of infringing products, are disregarded in favor of particularized local interests. *Volkswagen II*, 545 F.3d at 318; *TS Tech*, 551 F.3d at 1321.

ServiceNow argues that "[b]ecause the Eastern District of Texas has no substantive relation to BMC, ServiceNow, or this litigation and because the Southern District of Texas is home to one of the parties to this suit," this factor favors transfer to the Southern District of Texas. (MTV at 14.) While the Court does not necessarily accept ServiceNow's characterization of the evidence or as to venue, the Court does note that BMC is a company headquartered in the Southern District of Texas. (Resp. at 2.) However, BMC has at least thirty-five employees based out of an office in Plano, within the Eastern District of Texas. (Myers. Decl. ¶ 5.) Further, the only Texas office identified by ServiceNow is in Plano, which is within the Eastern District of Texas. (McGee Decl. ¶ 12.) Accordingly, the Court finds that this factor weighs against transfer.

#### ii. *The Administrative Difficulties Flowing From Court Congestion*

Another public interest factor is court congestion, which favors a district that can bring a case to trial faster. *Genentech*, 566 F.3d at 1347. While neither party expounds greatly upon this factor, ServiceNow provides statistics from PricewaterhouseCoopers showing that the Southern District of Texas is 2.3 months faster than the Eastern District of Texas. (MTV at 13.) BMC

counters with statistics that show the Southern District of Texas is 1.1 months faster than the Eastern District of Texas. (Resp. at 11.) The Court finds that both districts will bring this case to trial in a similar timeframe, and as such, this factor is neutral.

### iii. *Familiarity with the Governing Law*

Courts also consider "the familiarity of the forum with the law that will govern the case." *Volkswagen I*, 371 F.3d at 203. The Court observes that both districts are familiar with the relevant law. This factor is neutral.

### iv. *The Avoidance of Unnecessary Problems of Conflict of Laws*

The parties acknowledge that no conflict-of-law questions are expected in this case.

## VI. CONCLUSION

After weighing the evidence and the record, as a whole, in light of the applicable law, the Court finds that ServiceNow has failed to carry its burden to show that the Southern District of Texas is a clearly more convenient forum than the Eastern District of Texas. Accordingly, ServiceNow's Motion to Transfer Venue (Dkt. No. 16) is **DENIED**.

**So ORDERED and SIGNED this 30th day of April, 2015.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE