# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| BMC SOFTWARE, INC., | § § § | |
| *Plaintiff*, | § § | CASE NO. 2:14-CV-903-JRG |
| v. | § § | |
| SERVICENOW, INC., | § § § | |
| *Defendant*. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are certain motions concerning expert testimony: (1) BMC's Motion to Strike the Expert Report of Tim Crawford (Dkt. No. 224); and (2) ServiceNow's Motion to Exclude the Testimony of Dr. Michael P. Akemann (Dkt. No. 237).

The Court directed the parties to submit complete copies of each expert report, which have subsequently been reviewed by the Court. (Dkt. No. 240). The Court held a hearing on these motions on January 25, 2016. (Dkt. No. 316.) For the reasons set forth below, the motions to strike are **GRANTED**, but only to the extent specified below, and they are otherwise **DENIED**.

### I. BACKGROUND

On September 23, 2014, BMC Software, Inc. ("BMC") filed suit against ServiceNow, Inc. ("ServiceNow" or "SN") asserting claims of patent infringement as to the specified claims of the patents in this suit. (Dkt. No. 1).

BMC has asserted the following twenty-one claims from five patents: Claims 1, 2, 6, and 11 from U.S. Patent No. 6,816,898 ("'898 patent"); Claims 1 and 4 from U.S. Patent No. 6,895,586 ("'586 patent"); Claims 1, 3, 24, 26, 45, 56, 79, 80, 88, and 90 from U.S. Patent No.

7,062,683 ("'683 patent"); Claims 1, 3, and 4 from U.S. Patent No. 7,617,073 ("'073 patent"); and Claims 1 and 8 from U.S. Patent No 8,674,992 ("'992 patent") (collectively, the "patents-in-suit"). (Dkt. No. 311 ¶¶ 1, 4, 7, 10, and 13.)

## II. LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993). District courts are accorded broad discretion in making Rule 702 determinations. *Kumho Tire*, 526 U.S. at 152 ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the common nature of these factors direct the trial court to consider as its ultimate inquiry whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as

here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a [gatekeeper], a trial court must take care not to transform a *Daubert* hearing into a trial on the merits") (quoting FED. R. EVID. 702 advisory committee note). Instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is sufficiently reliable and relevant to the issue before the jury so as to be appropriate for the jury's consideration. *See Pipitone*, 288 F.3d at 249–50. As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## III. DISCUSSION

### A. BMC's Motion to Strike the Expert Report of Tim Crawford

BMC argues that Mr. Crawford's opinions are unreliable because his methodology is not generally accepted, his methodology does not demonstrate reliability, and Mr. Crawford does not reliably apply his methodology. *See* (Dkt. No. 224). ServiceNow responds that Mr. Crawford performed an analysis using a methodology created from his "direct experience throughout his career of reviewing hundreds of RFPs in connection with various customer purchase decisions for IT products" that "provides insight into the actual, real-world ITSM customer purchasing decision-making process." *See* (Dkt. No. 245 at 7–14.)

Although the Court does not find any issues with Mr. Crawford's experience and knowledge in the area of ITSM solutions, the Court finds that Mr. Crawford's opinions are not the product of reliable and articulated principles and methods as much as they are his own

subjective evaluation. As such, Mr. Crawford's opinions would not be helpful to the jury in its considerations of the ultimate issues of fact in this case. Mr. Crawford's opinions, while based on his own personal experience, are not based on reliable principles and methods that can be accurately reproduced, examined, and challenged. Fundamentally, Mr. Crawford's opinions are nothing more than *ipse dixit* statements. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."). Accordingly, the Court **GRANTS** Plaintiff's motion (Dkt. No. 224). Mr. Crawford's opinions, as presented in his reports, are stricken.

**B. ServiceNow's Motion to Exclude the Testimony of Dr. Michael P. Akemann**

ServiceNow seeks to exclude Dr. Akemann's opinions for the following reasons: (1) Dr. Akemann's reliance on Mr. Leopoldi's unreliable opinion for his 50% reduction of the total revenue is fundamentally flawed, (Dkt. No. 237 at 4–6); (2) Dr. Akemann's reasonable royalty opinion is actually a misapplication of the entire market value rule ("EMVR") and, if not, is a failure to properly apportion and distinguish the value of the patented features from the unpatented features, (*id.* at 6–9); and (3) Dr. Akemann's lost profits analysis is flawed for failing to show that the patents-in-suit drove demand and for failing to consider non-infringing alternatives, (*id.* at 9–15). BMC responds that ServiceNow's complaints are actually "factual disagreements with the information relied upon and the conclusions asserted by ITSM industry expert Mr. Frederick Leopoldi . . . and [attacks on] the factual underpinnings of Dr. Akemann's opinions relating to the value of the patented technology." *See* (Dkt. No. 250 at 1.) Further, BMC responds that Dr. Akemann does not apply the EMVR; instead, BMC argues that Dr. Akemann "properly focuses on the incremental value of the use of the patents-in-suit relative to their next best non-infringing alternative." (*Id.* at 7–8.)

The Federal Circuit has stated that "the governing rule is that the ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more." *Ericsson, Inc. v. D–Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). In what has been called a "narrow exception" to this general rule by the Federal Circuit, "[t]he entire market value rule has typically been applied to include in the compensation [royalty] base unpatented components of a device when the unpatented and patented components are physically part of the same machine." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549 (Fed. Cir. 1995); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012); *see also VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1329 (Fed. Cir. 2013) (faulting damages expert under the entire market value rule for failing to "to **subtract** any other unpatented elements from the [royalty] base.") (emphasis added). However, should a plaintiff wish to include both the patented and the unpatented features in the royalty base, *LaserDynamics* and its prodigy make clear that a patentee must prove that the infringing technology "drove demand for the [multi-component product]." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012); *see id.* ("[T]he presence of [the infringing] functionality [must be] what motivates consumers to buy [the multi-component product] in the first place.").

In determining BMC's reasonable royalty, Dr. Akemann considered Mr. Leopoldi's expert opinion on the desirability of BMC's patented features and reduced ServiceNow's total revenue by 50% to account for a "conservative calculation" of the "but-for" revenue allegedly "enabled" by BMC's patents. *See* (Dkt. No. 320 at 1–2.) Then, Dr. Akemann subtracted out those revenues he believed were subject to lost profits from the 50% "but-for" revenue to determine the incremental revenue that comprises the royalty base. *See* (*id.* at 2.) Finally, Dr. Akemann used this incremental revenue to determine the "minimum willingness to accept and

maximum willingness to pay in his reasonable royalty calculations." *See* (*id.*) The following graphic provides a clear illustration of Dr. Akemann's damages opinion:



(Dkt. No. 324 at 2) (for a hypothetical $1000 of revenue); *see also* (Dkt. No. 320 at 1–2.)

The Court finds that Dr. Akemann has failed to properly apportion because he has failed to specify, distinguish, and then separate the value of BMC's patented features from the unpatented features of ServiceNow's products. *Ericsson*, 773 F.3d at 1226. As a result, Dr. Akemann's opinions, as currently expressed, are unreliable and unhelpful to the trier-of-fact and must be supplemented prior to any presentation to the jury. Though BMC argues that the original 50% reduction was sufficient to "isolate or apportion the incremental revenue associated with use of the patents in suit," (Dkt. No. 320 at 2), the Court finds that such reduction is insufficient. *See Uniloc USA Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011) ("The patentee must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative, or show that the

entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature.") (citing *Garretson v. Clark*, 111 U.S. 120, 121 (1884)) (quotations omitted).

Dr. Akemann adequately identifies a portion of ServiceNow's revenue that he believes is at-risk in his 50% reduction. However, Dr. Akemann fails to properly apportion out the value of the unpatented features of ServiceNow's accused products in determining his reasonable royalty opinion. *See Smartflash LLC v. Apple Inc.*, No. 6:13-cv-447-JRG, 2015 WL 5840237, at *6 (E.D. Tex. Sept. 2, 2015) (finding that the plaintiff had failed to properly apportion out the unpatented features from the patented features in calculating the royalty base). Consequently, Dr. Akemann's current opinion fails to provide an ultimate combination of royalty base and royalty rate based on the "incremental value that the patented invention adds to the end product." *See Ericsson*, 773 F.3d at 1226.

Accordingly, the Court **CARRIES** ServiceNow's Motion to Exclude the Testimony of Dr. Michael P. Akemann (Dkt. No. 237) only as to the issue of whether Dr. Akemann's reasonable royalty fails to properly apportion BMC's patented features from the unpatented features of ServiceNow's products and is a violation of the EMVR; otherwise, the motion to exclude is **DENIED**. Further, BMC is **ORDERED** to supplement Dr. Akemann's report to correct this particular deficiency. The Court reserves the right to reevaluate the issue of whether or not Dr. Akemann has properly apportioned after such supplementation is complete.

Assuming that the Court determines that such supplementation is adequate and Dr. Akemann's supplemental report survives being stricken, BMC is **ORDERED** to structure its damages presentation in such a way that the jury will not be able to calculate ServiceNow's total revenues, in accordance with the evidentiary rule set forth in *Ericsson*. *See Ericsson*, 773 F.3d at

1226 ("The principle, applicable specifically to the choice of a royalty base, is that, where a multi-component product is at issue and the patented feature is not the item which imbues the combination of the other features with value, care must be taken to avoid misleading the jury by placing undue emphasis on the value of the entire product."). Thus, BMC is **ORDERED** to not disclose the total revenues of ServiceNow nor to disclose the percentage of ServiceNow's revenues that encompass the claimed royalty base. BMC must begin its substantive damages testimony with a generic statement that what has heretofore been identified within Dr. Akemann's reports (and those opinions of others he relied upon) as 50% of ServiceNow's total revenue for the accused products is simply the total monetary amount identified at issue in this case. This must be done generically and without revealing to the jury that it is half of ServiceNow's total revenues as to the accused products. The evidentiary guidance provided by the Federal Circuit in *Ericsson* must be complied with by BMC. *See id.*

## IV.  CONCLUSION

Having considered the Parties' various objections and arguments, BMC's Motion to Strike the Expert Report of Tim Crawford (Dkt. No. 224) is **GRANTED**.

Further, the Court **ORDERS** supplementation of Dr. Akemann's opinions and report on the issue of proper apportionment as specified, and **CARRIES** the motion pending supplmentation. The Court otherwise **DENIES** ServiceNow's Motion regarding Dr.Akemann.

In light of the above and the current trial setting in this case, the parties are **ORDERED** to comply with the following schedule for supplementation in regard to Dr. Akemann's opinions and report:

| Opening supplemental report served by BMC | Friday, Feb. 12 |
| --- | --- |
| Deposition of BMC's expert (up to **four** hours) completed | Monday, Feb. 15 |
| Responsive supplemental report served by ServiceNow | Tuesday, Feb. 23 |
| Deposition of ServiceNow's expert (up to **four** hours) completed | Friday, Feb. 26 |
| Renewed Motion to Strike supplemental reports, if any, filed with the Court | Monday, Feb. 29, at noon CST |
| Responses to Renewed Motions to Strike, if any, filed with the Court | Thursday, March 3, at noon CST |

**So ORDERED and SIGNED this 1st day of February, 2016.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE